UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RONNIE M. LYLES**                                             **CIVIL ACTION**

**versus**                                                      **NO. 13-655**

**ROBERT C. TANNER, WARDEN**                                    **SECTION: "K" (3)**

## REPORT AND RECOMMENDATION

   This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

   Petitioner, Ronnie M. Lyles, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, Angie, Louisiana. On March 15, 2001, he was convicted of two

counts of indecent behavior with a juvenile.[1] On May 9, 2001, he was sentenced on each count to a concurrent term of six years imprisonment.[2] On July 10, 2002, he was found to be a fourth offender and was resentenced as such on the first count to a term of twenty years imprisonment.[3] On September 16, 2003, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences.[4] He did not seek review of that judgment by the Louisiana Supreme Court.[5]

On or about October 7, 2003, petitioner filed a federal *habeas corpus* petition pursuant to 28 U.S.C. § 2254. His petition was dismissed without prejudice on September 20, 2004,[6] and the United States Fifth Circuit Court of Appeal denied him a certificate of appealability on

---

[1] State Rec., Vol. III of V, transcript of March 15, 2001, pp. 125-26; State Rec., Vol. III of V, minute entry dated March 15, 2001; State Rec., Vol. III of V, jury verdict forms.

[2] State Rec., Vol. III of V, minute entry dated May 9, 2001.

[3] State Rec., Vol. III of V, minute entry dated July 10, 2002.

[4] State v. Lyles, 858 So.2d 35 (La. App. 5th Cir. 2003) (No. 03-KA-141); State Rec., Vol. I of V.

[5] While petitioner's direct appeal was still pending before the Louisiana Fifth Circuit Court of Appeal, he filed a petition for a writ of certiorari with the Louisiana Supreme Court which was docketed as case number 2003-KH-2523. However, that petition did not challenge the Court of Appeal's judgment affirming his convictions and sentences; as noted, the Court of Appeal's judgment had not even been issued at the time the petition was filed with the Supreme Court. Rather, the Supreme Court petition, a copy of which is included in Volume V of the state court record, sought review of the state district court's denial of petitioner's motion challenging the adequacy of the trial transcript. The Supreme Court denied that petition on September 26, 2003. State *ex rel.* Lyles v. State, 854 So.2d 350 (La. 2003); State Rec., Vol. V of V.

[6] Lyles v. Miller, Civ. Action No. 03-2948 (E.D. La. Sept. 20, 2004); Rec. Doc. 1, p. 88.

March 17, 2005.[7]  The United States Supreme Court then denied his petition for a writ of certiorari on October 11, 2005,[8] and his petition for rehearing on January 9, 2006.[9]

On October 17, 2011, petitioner filed a "Motion for Amendment and or Modification of Sentence" with the state district court.[10]  On November 30, 2011, in connection with that motion, the state district court issued a order clarifying that petitioner's sentences were to be served concurrently.[11]  In the interim, he had also filed a "Motion to Vacate, Amend and or Modify Sentence" on November 8, 2011.[12]  That motion was denied on December 27, 2011,[13] and his related writ application was likewise denied by the Louisiana Fifth Circuit Court of Appeal on April 5, 2012.[14]

---

[7] Lyles v. Miller, No. 04-30950 (5th Cir. Mar. 17, 2005); Rec. Doc. 1, pp. 78-79.

[8] Lyles v. Miller, 546 U.S. 945 (2005).

[9] Lyles v. Miller, 546 U.S. 1134 (2006).

[10] State Rec., Vol. I of V.  Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Because that date cannot be gleaned from the state court record with respect to the filings in this case, this Court will simply use the signature date of the motions as the filing date, in that the motions were obviously placed in the mail no earlier than the date they were signed.

[11] State Rec., Vol. II of V, Order dated November 30, 2011.

[12] State Rec., Vol. II of V.

[13] State Rec., Vol. II of V, Order dated December 27, 2011.

[14] State v. Lyles, No. 12-KH-198 (La. App. 5th Cir. Apr. 5, 2012); State Rec., Vol. II of V.

On or about November 16, 2012, petitioner filed a motion for authorization to file a "second or successive" *habeas corpus* petition with the United States Fifth Circuit Court of Appeals. That motion was denied as unnecessary on January 9, 2013.[15]

On or after March 20, 2013, petitioner then filed the instant federal petition seeking *habeas corpus* relief.[16] In support of his petition, he asserted the following claims:

    1.    Petitioner's conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure;

    2.    The prosecution failed to disclose evidence favorable to the defense and knowingly presented and failed to correct materially false testimony at trial; and

    3.    Petitioner was denied his right to the effective assistance of counsel, in that his counsel "failed to consider the reputation of the accused and deprived the defendant of an opportunity to offer explanation at the preliminary hearing," waived petitioner's right to be present at the suppression hearing,

---

[15]  *In re* Lyles, No. 12-30132 (5th Cir. Jan. 9, 2013); Rec. Doc. 1, pp. 76-77.

[16]  Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). While that date cannot be determined with certainty here, petitioner signed his application on March 20, 2013, see Rec. Doc. 1, p. 73, which would be the earliest date it could have been submitted for mailing.

denied petitioner his right to testify on his own behalf at trial,

and failed to perform an adequate pretrial investigation.[17]

Petitioner thereafter filed a supplemental memorandum in support of his federal application in which he (1) reiterated and supplemented his claim that the prosecution knowingly presented and failed to correct materially false evidence at trial, (2) reiterated and supplemented his claim that he was denied his right to testify on his own behalf at trial, (3) added a claim that his counsel was laboring under a conflict of interest, and (4) reiterated and supplemented his claim his counsel failed to perform an adequate pretrial investigation.[18]

In its response in this proceeding, the state argues that petitioner's federal application is untimely, that petitioner failed to exhaust his remedies in the state courts, and, lastly, that his claims are procedurally barred.[19] The state is correct on all three points.

Concerning timeliness, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal *habeas corpus* applications. The state argues, and petitioner does not dispute, that 28 U.S.C. § 2244(d)(1)(A) is the applicable provision for determining the timeliness of the instant application. Under that provision, the one-year limitations period runs from the date on which petitioner's state criminal judgment "became final by the conclusion of direct review or the expiration of the time for seeking such

---

[17] Rec. Doc. 1.

[18] Rec. Docs. 26 and 31.

[19] Rec. Doc. 15.

review." 28 U.S.C. § 2244(d)(1)(A). Concerning finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
> 
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's convictions and sentences on September 16, 2003.[20] Therefore, his state criminal judgment became final on October 16, 2003, when his thirty-day period expired for seeking further direct review by filing a writ application with the Louisiana Supreme Court. See Louisiana Supreme Court Rule X,

---

[20] State v. Lyles, 858 So.2d 35 (La. App. 5th Cir. 2003) (No. 03-KA-141); State Rec., Vol. I of V.

§ 5(a). Accordingly, his federal limitations period commenced on that date and then expired one year later on October 18, 2004,[21] unless that period was extended by tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, petitioner had no such applications pending before the state courts during the applicable one-year period.

It is true, of course, that petitioner's first federal *habeas corpus* application was filed during that period; however, that clearly has no bearing on the timeliness of the instant application. The United States Supreme Court has expressly held that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)" and, therefore, a prior federal application does not toll the AEDPA's statute of limitations. Duncan v. Walker, 533 U.S. 167, 181-82 (5th Cir. 2001).

---

[21] The Court is aware that, because the year 2004 was a leap year, the three-hundred-sixty-fifth day of petitioner's one-year period was October 15, 2004. However, courts have held that it is the "anniversary date" on which the AEDPA's statute of limitations expires, regardless of the existence of an additional day due to a leap year. See, e.g., United States v. Hurst, 322 F.3d 1256, 1261-62 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000); Zeno v. Louisiana, Civ. Action No. 06-4096, 2009 WL 3190461, at *3 n.17 (E.D. La. Sept. 30, 2009). Moreover, because the "anniversary date" of October 16, 2004, fell on a Saturday, the federal limitations period was extended through the following Monday, October 18, 2004. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

Further, it is also true that petitioner filed state post-conviction motions in 2011. However, because those motions were filed *after* the expiration of the federal statute of limitations, they likewise had no bearing on the timeliness of his federal application. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations period expired, "[t]here was nothing to toll." Butler, 533 F.3d at 318.

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner alleges that equitable tolling is warranted. However, he offers no colorable evidence in support of that contention; rather, he simply contends that he has been the victim of a "conspiracy with intent to obstruct the due course of justice, fraud, and abuse of trial court discretion."[22] That conclusory allegation is clearly insufficient to meet his burden of proof to show that some extraordinary circumstance prevented timely filing.

---

[22] Rec. Doc. 23, p. 19.

- 8 -

Further, he also cannot make the other required showing that he has been diligently pursuing his rights. For example, more than five years elapsed between the time his first federal application was dismissed without prejudice based on his failure to exhaust his state court remedies and the time he finally returned to state court in 2011 to again seek post-conviction or other collateral review. "Equitable tolling 'is not intended for those who sleep on their rights.'" Arita v. Cain, 500 Fed. App'x 352, 354 (5th Cir. 2012) (quoting Mathis v. Thaler, 616 F.3d 461, 474 (5th Cir. 2010)).

Lastly, the Court notes that petitioner argues that he is actually innocent.[23] The United States Supreme Court recently held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). However, the Supreme Court took care to note: "We caution ... that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). As the United States Sixth Circuit Court of Appeals has explained:

> To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted). With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred." Id. (internal quotation marks omitted).

---

[23] See, e.g., Rec. Doc. 1, p. 41.

Eberle v. Warden, Mansfield Correctional Institution, 532 Fed. App'x 605, 613 (6th Cir. 2013).

A logical starting point, therefore, is to look at the "old" evidence, i.e. the evidence presented at trial and on which petitioner's convictions are based. That evidence is recounted in the Louisiana Fifth Circuit Court of Appeal's summary of the facts of this case on direct appeal:

> At trial, Z.H., the mother of the victim, B.H., testified that B.H. is her 11 year old daughter and, the other victim, L.W., is her 14 year old niece, who resides with her in New Orleans.[FN1] Z.H. testified that she was informed of allegations of sexual abuse by her daughter, B.H. After watching a movie concerning sexual abuse, B.H. hesitantly told her that the Defendant, who at the time was dating Z.H.'s sister, Paula, made her touch his private part and kissed her. B.H. stated that the incident occurred in Paula's room at the family house in Westwego where family parties were often held. B.H. informed her that, during Christmas break, when she was in the fourth grade, she and her cousins were watching television while the Defendant painted their toenails. B.H. told Z.H. that the Defendant placed her hand on his "private part" and kissed her. Z.H. then asked L.W. if she needed to tell her anything, but L.W. did not disclose what had happened to her at that time. The day after B.H.'s disclosure, Z.H. telephoned the police and made a complaint against the Defendant.
>
>> [FN1] In accordance with La. R.S. 46:1844, to protect the identity of the minor victims, they will be referred to by their initials, B.H. and L.W. Additionally, the victims' mothers will be referred to by their initials, Z.H. and S.W, respectively.
>
> Detective Larry Dyess of the Jefferson Parish Sheriff's Office's (JPSO) Personal Violence Unit testified that, on July 18, 2000, a report was filed involving two victims, B.H. and L.W. On July 24, 2000, Detective Dyess contacted the reporting person, Z.H., and scheduled an interview with the victims at the Children's Advocacy Center. Detective Dyess first spoke with Z.H. regarding the information she received from B.H. and L.W. The detective then spoke briefly with the victims. The victims next met with the center's forensic interviewer.

Detective Dyess was questioned at trial about the portion of his report detailing his interview with Z.H. The report reflected that L.W. informed Z.H. that the Defendant had put his hand on her "stuff" and put his finger inside of her. Nothing in the report indicated that the Defendant ever kissed or attempted to kiss L.W., nor did Detective Dyess recall L.W. disclosing that to him. Detective Dyess was also questioned about his testimony at a preliminary hearing that both victims were together with the Defendant when the crime occurred and that the Defendant was helping them paint their toenails. Detective Dyess was told that the incidents occurred in 1998 or 1999 and the time was not further specified.

Omalee Gordon (Gordon) of the Gretna Police Department testified that she was assigned to the Jefferson Parish Children's Advocacy Center to conduct forensic interviews with children. Gordon testified that, on August 8, 2000, she interviewed both B.H. and L.W. at the center. L.W. told her that the Defendant put his tongue in her mouth and put his hand on her private part, and that B.H. said the Defendant put his tongue in her mouth and put her hand on his private part. Gordon testified that she did not question the victims about any family members or review any therapy or school reports. She also did not recall if the victims informed her of the specific time the incidents occurred.

L.W., the fourteen year old victim, testified that she was interviewed at the Jefferson Parish Children's Advocacy Center. A video tape of the interview was played for the jury. In conformity with her videotaped statement, L.W. testified that she was at the family home in Westwego in her Aunt Paula's room watching television with her cousin when the Defendant walked into the room. The Defendant sat on the bed next to her. When her cousin went to the bathroom, the Defendant put his hand on her "privacy part." L.W. told the Defendant to stop but he did not do so immediately. L.W. testified that she did not tell anyone at the time of the incident because she was scared.

L.W. further testified that, on another occasion, she was playing hide-and-go-seek with her cousins and hiding in the garage, when the Defendant walked into the garage looking for her. When the Defendant found her, he kissed her, putting his tongue into her mouth. L.W. told him to stop and the Defendant left the garage. L.W. also testified that, on one occasion, the Defendant walked out of the bathroom with a towel partially covering him and that she could see his "private parts." The Defendant asked her a question, stated he was going to get dressed, and went downstairs.

>   L.W. testified that she never told anyone what happened until after watching a movie with B.H. and Z.H. B.H. told L.W. that she was scared to sleep and that she had a secret concerning herself and the Defendant. L.W. then told B.H. that the Defendant had done something to her. L.W. eventually told Z.H. about the incidents concerning the Defendant. L.W. testified that she was not sure exactly when the incidents occurred but that she was in the fifth grade.
>   The second victim, B.H., testified that she had also been interviewed at the Jefferson Parish Children's Advocacy Center. The videotaped interview was played for the jury. Thereafter, B.H. testified that the incident involving the Defendant occurred at the family home in Westwego during Christmas holidays. B.H. testified that, when she was in the fourth or fifth grade, she and some of her cousins were in her Aunt Paula's room watching television and having their toenails polished. The Defendant, who was also on the bed, took her hand and made her touch his "private." The Defendant then kissed her, putting his tongue into her mouth. B.H. testified that she did not tell anyone what happened because she was afraid. However, at some point, she told L.W. and Z.H. about the incident. B.H. further testified that when she told L.W. what had happened to her, L.W. told her that the Defendant had done something to her, too.
>   Additionally, S.W., the mother of L.W., testified that L.W. lives with Z.H. in order to attend a school in that district. S.W. testified that L.W. did not tell her anything concerning the Defendant or any inappropriate touching and that she knew little about the case.[24]

The foregoing evidence is obviously compelling evidence of guilt. Moreover, petitioner's "actual innocence" argument is based on his contention that the testimony of the witnesses at trial was uncorroborated and contradictory. That, however, is not "new evidence"; such purported defects were apparent at trial and therefore presumably considered and rejected by the jury. Therefore, petitioner simply has not made the required showing that, in light of "new evidence,

---

[24] State v. Lyles, 858 So.2d 35, 41-43 (La. App. 5th Cir. 2003) (No. 03-KA-141); State Rec., Vol. I of V.

no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." McQuiggin, 133 S. Ct. at 1928.

Because petitioner is not entitled to statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for *habeas corpus* relief had to be filed no later than October 18, 2004, in order to be timely. His federal application was not filed until on or after March 20, 2013, and, therefore, the undersigned recommends that it be dismissed with prejudice as untimely.

That said, even if the United States District Judge were to reject the foregoing recommendation and conclude that the instant federal application was timely filed, petitioner still would not be entitled to relief. As the state alternatively argues in its response, his application would also be subject to dismissal for the following reasons even if it had been timely filed.

First, it is clear that the claims petitioner asserts in his federal application are unexhausted. Federal law provides: "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted). The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a

> state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

Therefore, "[t]o exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's *highest court* in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).

Here, there is no question that, as was also the case with respect to his first federal *habeas corpus* application, petitioner has failed to present *any* of his instant claims to the state's highest court, the Louisiana Supreme Court, for review. On the contrary, he filed only two Louisiana Supreme Court writ applications which were in any way related to these convictions. In the first such application, which was docketed as case number 2003-KH-2523 and is included in Volume V of the state court record, he merely sought review of the state district court's denial of his motion challenging the adequacy of the trial transcript. His second such application, which was docketed as case number 2006-KH-0776 and is included in Volume V of the state court record, concerned only a request for public records. Because he has never fairly presented the substance of his instant claims to the Louisiana Supreme Court, thereby giving that court the opportunity to

- 14 -

pass upon and correct the alleged violations of his federal rights, his claims are obviously unexhausted.

Further, it is clear that any new attempt by petitioner to now bring his unexhausted claims in the state courts would be barred by the state's procedural rules. For example, because his conviction became final in 2003, any post-conviction application asserting these claims would be rejected by the state courts as untimely. See La.C.Cr.P. art. 930.8(A). In light of that fact, his claims are also procedurally defaulted in this federal proceeding. See, e.g., Bledsue v. Johnson, 188 F.3d 250, 254 (5th Cir. 1999) ("Procedural default exists where ... the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred."); Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997).

Of course, in limited circumstances, a *habeas* petitioner may still be afforded federal review of defaulted claims. Specifically, this Court may review petitioner's defaulted claims if he demonstrates either (1) the existence of "cause" *and* "prejudice" or (2) that a failure to address the claims will result in a "fundamental miscarriage of justice." See, e.g., Bagwell v. Dretke, 372 F.3d 748, 756-57 (5th Cir. 2004). Here, petitioner has demonstrated neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Here, petitioner has not established cause for his procedural default of his claims,[25] and, "[a]bsent a showing of cause, it is

---

[25] Petitioner may perhaps be arguing that the cause for his default was the Louisiana Fifth Circuit Court of Appeal's purported violation of his right to the effective assistance of counsel when it allowed him to proceed without counsel on direct appeal after he fired his attorney. See Rec. Doc.

- 15 -

not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, this Court must determine whether the application of the procedural bar would result in a fundamental miscarriage of justice. In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). As already explained earlier in this opinion, petitioner has not made a persuasive showing that he is actually innocent of the charges of which he stands convicted. Therefore, he has not demonstrated that any miscarriage of justice will result from the application of the procedural bar. Accordingly, even if petitioner had timely sought federal review, *which he did not*, his claims would still be procedurally barred in this federal court.

---

26, pp. 26-27; see also Rec. Doc. 26-1, pp. 1-60. It is unclear how that action by the Court of Appeal is related to the default at issue here. Nevertheless, even if that action bore some relationship to the instant default, it cannot serve as "cause" for the default. Because petitioner has never argued to the Louisiana Supreme Court that he was denied effective assistance of counsel on appeal, any such claim would itself be unexhausted and, therefore, procedurally defaulted. A procedurally defaulted ineffective assistance of counsel claim may not serve as "cause" for a procedurally barred claim unless the petitioner also shows "cause and prejudice" for the defaulted ineffective assistance of counsel claim. See Edwards v. Carpenter, 529 U.S. 446 (2000); Rachal v. Quarterman, 265 Fed. App'x 371, 375 (5th Cir. 2008). Petitioner has not attempted to make that showing.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Ronnie M. Lyles be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[26]

New Orleans, Louisiana, this eighteenth day of August, 2014.

*[signature]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[26] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.